Lumpkin *vs.* Mills.

No. 38.—JOHN H. LUMPKIN, administrator of Thomas Mills, deceased, plaintiff in error, *vs.* AMBROSE MILLS, defendant.

| 4 | 343 |
|---|---|
| 90 | 688 |
| 4 | 343 |
| e122 | 798 |
| 123 | 638 |

[1.] A Surety who has paid the debt of his Principal, is, in a Court of Chancery, upon the Equity which springs out of the relation of Principal and Surety, and the fact of payment, subrogated to all the rights of the creditor; and in the distribution of the assets of the Principal, is entitled to occupy the place and to be substituted for, the creditor, upon the original evidence of the debt.

In Equity, in Floyd Superior Court, before Judge Wright. October Term, 1847.

The facts of the case are embodied in the opinion of the Court.

SHACKELFORD & HOOPER, for plaintiff in error, contended :

I. A surety paying off the debt of the principal, for which he is bound, has no right that can be enforced in Equity, to have the debt assigned to him; but has only the right to have *independent collateral securities*, so assigned. 1 *Story's Eq. Jur.* 513, 14.— *Copis vs. Middleton*, 1 *Turner & Russ*, 224, 229. *Jones vs. David*, 3 *Cond. Eng. Ch.* 665. *Theobald, Prin'l and Surety*, 173, 4.

II. The assignment of a debt which has been paid, would be a mere nullity in Equity as well as at Law. *Story Eq.* 515, *n* 1.

III. A surety paying off a bond debt, will be treated in marshalling assets, as a mere simple contract creditor. 1 *Story's Eq.* 516, 7, *n.* 2 and 3. Civil Law otherwise. *Ib.* 520, 1.

IV. In cases of Bankruptcy, the practice in England is governed by express Statute. 6 *Geo. IV. ch.* 16. *Theob.* 174.

V. The remedy of the surety is by action *for money paid, &c.* *Tousant vs. Martinant*, 2, *T.* 104. *Theo. P. and S.* 169, 70.— *Com. on Cont.* 398, 9. 1 *Story's Eq.* 517, 18, note.

VI. The doctrine or rule of substitution should be equally applicable to all cases that may arise. In reference to the Statute of Limitations it would work injustice. *Com. on Con.* 70, 73.— *Theob. P. & S.* 169, 70.

VII. The state of *Judicial decisions* in England at the date of our "adopting Statute," does not affect this question, if those decisions were not founded on Law.

Wm. H. Underwood & Trippe, for defendant.

Judge Lumpkin, being a relative to the plaintiff in error, did not preside in this cause.

*By the Court.*—Nisbet, J. delivering the opinion.

This was a Bill filed by the plaintiff in error, as Administrator, to marshal the assets of his intestate. The defendant in his answer, set forth, that as surety for the plaintiff's intestate upon a note of hand under seal, he had paid the debt of his principal, and therefore claimed in equity, to be subrogated to the rights of the creditor, and to come in, in the marshalling of the assets, as a bond creditor. The plaintiff in error claims that he is only an open account creditor. The question, therefore, and the only question made upon this record, is this : *Can a surety, in Equity, upon the settlement of an insolvent estate, who has paid a debt of his principal due upon an instrument under seal, be subrogated to the rights, and substituted to the position of the creditor, so as to come in as a creditor under that instrument, or is he entitled only as a creditor by open account?*

[1.] It is conceded in the outset, that the authorities upon this subject do not run a uniform course. The early English cases are with the defendant, and recognise the right of subrogation. Cases of the very highest authority in Great Britain, decided since our revolution, settle the rule differently, and deny his right to be paid, otherwise, than as a creditor by open account. The American authorities are also in conflict, but we think their preponderance is in favor of the early British rule. The Civil Law also sustains that rule, and so do the authorities in those countries where the Civil Law is recognised. We think, upon principle, the rule of the British Courts, anterior to our revolution, right. If it was not, it is obligatory upon us as law. The Civil Law is the parent of that rule—as it is, in truth, of many, very many of the principles of Equity, which obtain in the English Chancery Courts. That code is not of binding authority upon us, but I recognise in it, in reference to many titles of the law, and among them that of *principal* and *surety,* the very best system extant. Its broader, and more reasonable, and less fettered equity, is

Lumpkin *vs.* Mills.

gradually being transferred into the American Jurisprudence. And where authorities are in conflict, and principles doubtful, a Court does well to allow the Roman Law to quiet the conflict and dispel the doubt. We have no difficulty, either upon authority or principle, in settling, as the rule of this Court, that a surety, who has paid the debt of his principal, is, in a Court of Equity, entitled, in all respects, to occupy, in the distribution of his estate, the place of the creditor.

It is a well settled doctrine of the Common Law, that a surety upon payment of the debt of his principal, is entitled to an assignment of all the independent securities in the hands of the creditor, with all the remedies which he had to enforce them against the principal. The Roman Law goes farther. By that law, not only is he entitled to these securities, but he is also entitled to be substituted as to the very debt itself, to the creditor, by way of cession or assignment. The debt in favor of the surety is treated, not as a paid, extinguished debt, but as sold to him—all its original obligatory force, continuing against the principal. The surety is viewed in the light of a purchaser. The statement and reasoning of the Civil Law is as follows: " *Fidejussoribus succurri solet, ut stipulator compellatur ei, qui, solidum solvere paratus est, vendere cæterorum nomina. Cum is, qui et reum et fidejussores habens, ab uno ex fidejussoribus accepta pecunia præstot actiones; poterit quidem dici, nullas jam esse; cum suum perceperit, et preceptione omnes liberati sunt. Sed non ita est; non enim in solutum accepit, sed quodammodo nomen debitoris venedidit. Et ideo habet actiones, quia tenetur ad id ipsum, ut præstt actiones.*" Of the reasoning upon which the Civil Law goes. Mr. Story says : " it may seem a little artificial, but it has a deep foundation in natural justice." *Pothier on Oblig.* by *Evans,* n. 275, 280, 281. 428, 429, 430, 519, 520, 521, 522. *Dig. Lib.* 46, *tit,* 1, 1, 17, 1, 36. *Pothier Pand. Lib.* 46, *tit.* 1, *n.* 46. *I Domat. B.* 3 *tit.* 1, *Sect.* 3. *Art.* 6, 7.

This rule, I stated, is adopted in countries which recognise the Civil Law. *Nap. Code, Art.* 1251, 1252. *Bell's Dict. Art. Beneficium cedendarum actionum. Civil Code of Louisiana, Art.* 2157, 2158. *Voet, ad Pand. Lib.* 46, *tit.* 1 *Sect.* 27, 29, 30. *Huber Prælect. Inst. Lib.* 3, *tit.* 21, *n.* 8. *Ersk. Inst. B.* 3, *tit.* 3, *Art.* 68. 1 *Kaime's Eq.* 122, 124. The Courts of Great Britain, in some of the earlier cases, enlarged the rule that I stated was settled— to-wit: that a surety is entitled to the independent collateral se-

curities, with all the creditor's remedies to enforce them against the principal; and held that the surety should be also entitled to an assignment of the very debt itself; thus going the full length of the Civil Law, and subrogating him fully to the rights of the creditor. The rule thus enlarged, we recognise as the Common Law rule, at the time we adopted it. In *ex parte Crisp, Lord Hardwick* said, that where a surety paid off a debt, he was entitled to have from the creditor, an assignment of the security, to enable him to obtain satisfaction for what he had paid beyond his proportion. 1 *Atkins*, 133. In *Morgan vs. Seymour*, the Court decreed that the creditor should assign over his bond to the two sureties, to enable them to help themselves against the principal debtor. 1 *Ch. R.* 64. The principle was applied in a very strong case in *Vernon*. The principal had given bail in an action, and judgment was recovered against the bail. Afterwards, the surety to the original debt was called upon and paid it, and it was held that he was entitled to an assignment of the judgment against the bail. So that, although the bail was but a surety, as between him and the principal debtor, yet coming in the room of the principal, as to the creditor, it was held that he likewise came in the room of the principal debtor, as to the surety. This case establishes that the surety has precisely the same rights that the creditor had, and shall stand in his place—a case of entire subrogation. *Parsons vs. Briddock*, 2 *Vernon*, 608. These three cases are anterior to the era of the revolution, and demonstrate how the law stood at that time; and considering that we are not at liberty to depart from the Common Law, as it then stood, and that up to that time the rule was not seriously questioned, we might stop the review here. It may, however, be more satisfactory to press the discussion through the course of this question, down to the present moment, and to look into the reasonableness of the modern English rule. Other cases since that era, recognize the doctrine as held in the three cases referred to. It received an express recognition by the Chancellor, in *Wright vs. Morely*, 11 *Vesey*, 12, 21, 22; in which case, the case of *Parsons vs. Briddock*, in *Vernon*, is commented on and sustained. See also *Dowbiggin vs. Bourne*, 1 *Younge*, 111. S. C. 2 *Younge & Coll.* 464. *Butcher vs. Churchill*, 14 *Vesey*, 567, 575, 576. *Ex parte Rushworth*, 10 *Vesey*, 409, 414. *Robinson vs. Wilson*, 2 *Madd.* 464. *Craythorn vs. Swynborne*, 14 *Vesey*, 160, 162. *Hotham vs. Stone*, 1 *Turner & Russ.* 226, *note*.

Lumpkin *vs.* Mills.

It is nevertheless true, as Mr. Story states, that the rule is now different in England.  Without following the authorities minutely through, it may be stated that the late rule, which denies the right of the surety to a cession of the debt itself, and to a perfect substitution for the creditor, rests chiefly upon two comparatively recent cases, determined by two of the ablest Chancellors of England.  I allude to the case of *Copis vs. Middleton*, 1 *Turner & Russ.* 224, determined by *Lord Eldon*, and *Hodgson vs. Shaw*, 3 *Mylne & Keene.* 183, determined by *Lord Brougham.*  These are names of preëminent authority, and their weight settles all controversy about the matter at this moment in England.  It is not a little remarkable, that names of authority equally conclusive, on this side of the water, are arrayed against these potent chiefs of the English Chancery, to-wit:  *Marshall and Kent.*  Neither *Lord Eldon* nor *Lord Brougham* questions the rule, that a surety is entitled to an assignment of the collateral securities.  The former said, " it is a general rule in Equity, that the surety is entitled to the benefit of all the securities which the creditor has against the principal.  But then the nature of those securities must be considered.  When there is a bond merely, if an action was brought upon the bond, it would appear upon oyer of the bond, that the debt was extinguished.  The general rule must be qualified, therefore, by considering it to apply to such securities as continue to exist and do not get back upon payment to the person of the principal debtor."  Lord Brougham says :  " Thus the surety paying is entitled to every remedy which the creditor has.  But can the creditor be said to have any specialty, or any remedy on any specialty, after the bond is gone by payment ?  The surety may enforce any security which the creditor has, but by the supposition, there is no security to enforce, for the payment has extinguished it."  The whole of this reasoning is founded upon the technical idea, that payment by the surety, is an extinguishment of the debt ; and being so extinguished, if the evidence of it were assigned to the surety, it will avail him nothing.  It may be true, that in a suit on the bond in the case at this bar, by the surety, he might be met and defeated by a plea of payment.  Be it so.  We are not in a Court of Law.  And really, it would seem that the reasoning of these great Chancellors would rather fall appropriately from the lips of *Lord Kenyon* or *Mansfield* in a Court of Law, than from theirs in a Court of Equity.  For it will be

seen, that the rights of the surety in this matter, depend upon no such subtle technicality, but upon *an equity, which springs out of the fact of payment, and out of his relation to the principal debtor.* It may be well questioned, whether upon principles of common sense and common equity, the payment by a surety out of his own funds, of the debt of another, in the consideration of which he was not at all interested, ought to be considered, as to the surety, an extinguishment. Upon a question as to the right of subrogation, a Chancellor ought not so to hold it. These cases go upon the fact, that the debt is in law extinguished. The Civil Law, addressing itself to the equity of the transaction, will not admit that it is extinguished, but *bought* by the surety. A purchaser of a negotiable security for value, would, upon the instrument, acquire the rights of the original creditor. How can he occupy a position in a Court of Equity, more favorable than a surety ! The equities are stronger in favor of the surety. Whilst upon this phase of the argument, it may be well to say, that it is quite immaterial whether there is in point of fact an assignment of the debt or not; for if upon equitable principles the surety is entitled to it, Chancery will consider that as done, which ought to have been done. 12 *Wheat.* 596. And if necessary, would decree an assignment to be made. Equity will not permit the creditor to prejudice the rights of the surety, by a refusal to make an assignment. Upon what principle is it that the surety is entitled to the collateral securities in the hands of the creditor? It is not by virtue of a contract between him and the principal. The only contract between them, is the implied contract which results from the relation of principal and surety. And that is, that if the surety is compelled to pay the debt, the principal will reimburse him. It is upon this implied contract that the surety is entitled to his action for money paid to the use of his principal. This contract does not give him the right to the collateral securities. How then do *Lords Eldon* and *Brougham* arrive at the right of the surety to the collateral securities? It is by invoking the equity which flows necessarily out of the payment and relationship of the parties. Hear what *Lord Brougham* says : " The rule here is undoubted, and it is founded upon the plainest principles of natural reason and justice, that a surety paying off a debt, shall stand in the place of the creditor, and have all the rights which he has, for the purpose of obtaining reimbursement. It is hardly possible to put this right of substitution too high, and the

right *results more from equity, than contract or quasi contract,* un-
less, in so far as the known equity may be supposed to be imput-
ed into a transaction, and so to raise a contract by implication."
Now, what I have to say in reference to this reason, is this—it
applies with equal force in favor the surety's right to a transfer
of *the debt* itself, as in favor of his right to a transfer of the col-
lateral securities. He is entitled to the latter, not by contract,
but according to principles of *natural reason and justice.* By these
principles, he is made to *stand in the place* of the creditor. And
so standing, the right to the collateral securities follows. Here is
the doctrine of *substitution* recognised, and the powers of a Court
of Chancery are invoked to give it effect. The doctrine once ad-
mitted, and it seems to me impossible to escape from the conclu-
sion, that whatever are the rights of the creditor, anterior to the
payment, and subsisting at the time, they devolve upon the sure-
ty. The principles of *natural reason and justice* pass them to
him. And one of these rights, in the case before us, is to be let
in, in the distribution of the estate of the debtor, as a specialty
creditor, if the debt had not been paid by the surety. He paying
it, is subrogated to that right. He is clearly as much subrogated
to that right as he can be to the right of enforcing a mortgage or
any other collateral security. I can not, I do not recognize the
conclusiveness of the reason, that the bond is paid, and therefore,
as to that, the substitution cannot take place. The substitution
of the surety is not for the creditor as he stands related to the
principal *after* the payment, but as he *stood* related to him *before*
the payment. He is subrogated to such rights as the creditor
*then* had against the principal. One of which unquestionably
was, to enforce his bond against the principal, and if he was in-
solvent, to be let in as a bond creditor. What difference is there
between permitting a surety to reimburse himself out of a mort-
gage lien held by the creditor, and permitting him to take out of
the estate generally of the principal, the amount he has paid ? If
he realizes upon the mortgage, he abstracts the amount which he
has paid from the estate of the principal—if he realizes on the
bond, the mortgaged property goes back into the common fund,
and the result to him and to other creditors is the same. The
very fact, that the surety could not enforce the bond *at law*, is a
reason in Equity, why he should be allowed to come into the dis-
tribution as a bond creditor. So determined, as I shall show, in

New York. With profound reverence for these profound Jurists, I may be permitted to say, that the reasoning upon which their Judgment is founded, is not, to say the least of it, conclusive.

Inconsistent too with their reasoning, is the rule as to the rights of sureties, which has been adopted in the English Courts of Bankruptcy. If the creditor, in case of the bankruptcy of the principal debtor, has proved his debt before the commissioners, and then the surety pays the debt, the latter will be entitled to the dividends declared on his estate, and the creditor will be held his trustee for that purpose. *Ex parte Rushworth,* 10 *Vesey,* 409. *Wright vs. Morely,* 11 *Vesey,* 12, 22. *Watkins vs. Flannagan,* 3 *Russel,* 421. *Ex parte Houston,* 2 *G. & Jamieson,* 36. *Ex parte Gee,* 1 *G. & Jamieson,* 330. So also, the surety may compel the creditor to go in and prove his debt before the Commissioners, and then, if he pays the whole debt, the creditor will in like manner become a trustee of the dividends for him. 10 *Vesey,* 409, 414. *Wright vs. Simpson,* 6 *Vesey,* 73 4. In these cases the surety is subrogated to the rights of the creditor, upon the specific debt which is due him by the Bankrupt.

The fact of proving his debt before the commissioners, can create no stronger equity in favor of the surety, than that which results to him, in case of the insolvency of the estate of the debtor, after his decease. In marshalling the assets of a decedent, a Court of Chancery would allow a bond creditor his dividend, according to the dignity of his debt, only upon the debt being proven. Upon the principles of the rule in bankruptcy, if a decree marshalling assets should allow a creditor his dividend, it would be considered that his debt had been proven; and if the surety should then step forward and pay it, he would be entitled to all the creditor's rights under that decree. In equity, without such decree, it would seem that his rights ought to be the same. The equity which substitutes him at all, ought to substitute him always upon the payment of the debt.

The authority of *Mr. Story* is claimed in support of the doctrine, as taught in *Copis vs. Middleton* and *Hodgson vs. Shaw.* The claim is questionable—it is even doubtful whether the opinion, from all that appears, of that learned Jurist be not against that doctrine. As a faithful commentator, it was his duty to state the rule, as it was settled at the time he wrote. He does state it to be settled according to the decisions of *Lords Eldon* and *Brough-*

*am.* It is very strange, however, that in his review of this question, *Judge Story* has failed to refer to numerous leading American cases. For example, I do not find, that he notices at all the *Virginia* decisions—that of *Ch. J. Marshall* in *Brockenborough* among them. Nor has he quoted even, the solemn Judgment of the *Supreme Court of the United States,* against what he states to be the settled rule. It is passing strange, that in commenting on a doctrine, differently decided in England and in our own Courts, such authority as *Marshall* on the Circuit, and the Supreme Court, should either escape him, or be considered unworthy of comment. To return, however, to his opinion upon this subject. It is very apparent that he does not fully give in to the rule as settled. In speaking of the contrary doctrine, he speaks doubtingly of its being an erroneous opinion. " The error of the contrary opinion, says he, *if indeed upon the principles of enlarged equity any there be,* seems to have arisen," &c. Clearly expressing a doubt in his own mind, whether the contrary opinion be erroneous. . 1 *Story's Com. on Eq. Sec.* 499. In commenting on the rule of the Civil law, as opposed to the cases of *Copis vs. Middleton* and *Hodgson vs. Shaw,* he remarks, "It is not wonderful that Courts of Equity, with this enlarged doctrine in their view, which is in entire conformity to the intention of the parties, as well as to the demands of justice, should have struggled to adopt it into the Equity Jurisprudence of England. The opposing doctrine, (that of *Copis vs. Middleton, and Hodgson vs. Shaw,*) is founded more on technical rules than on any solid reasoning, founded on general equity." Again, he says, "whether it might not have been as wise for Courts of Equity to have followed out the Roman Law to its full extent, instead of adopting a modified rule, which stops, or may stop short of some of the purposes of reciprocal justice, it *is* now too late to enquire, and therefore the discussion would-be useless." 1 *Story's Com. on Eq. Sect.* 499, *c. note* 3. Now this is not the language of approval—it is rather that of regretful disapproval. The weight, I have stated, of the American cases, is with the old Common law Rule, very respectable authorities being against it. In *Tennessee,* a surety who has paid the judgment against his principal, is substituted in equity, to all the rights of the judgment creditor; nor need the creditor be made a party where a bill is filed by the surety to enforce it. *McNairy vs. Eastman,* 10 *Yerger,* 310.

In *Perkins and others vs. Kershaw and others*, Judge *O'Neal*, although no judgment was rendered to the extent that a surety is substituted for the creditor as to the identical debt paid, yet uses language so general and sweeping, as to imply that position. He says, "the surety who pays the debt of his principal, has a right to be remitted to all *the rights* and securities of the creditor. *He is in equity, substituted for the creditor.*" 1 *Hill, Ch. R.* 351. In *Burrows vs. Mc Whann*, the Court goes the length of adjudging that a judgment in favor of the creditor against the principal debtor, although actually discharged on the record, when the debt is paid by the surety, shall be revived for the purpose of giving effect to his right of subrogation. No case could be stronger than this. The debt is in judgment, and a lien is thereby created in favor of the creditor against the estate of the principal, yet the surety who pays that judgment, even after an entry of satisfaction, is substituted for the creditor on that judgment, and the lien enures to his benefit. 1 *Dess. Rep.* 409. To the same extent is the case of *Sprigg vs. Braman*, 6 *Louis. Rep.* 59. In that State, however, as is well known, the Civil Law, to a great extent, prevails. The rule of the Civil Law as to substitution, is embodied in the Civil Code of Louisiana. *Civil Code of Louis. art.* 2157, 2158.

In the New York Chancery, it may be assumed as an incontrovertible fact, that the rule of the Civil Law prevails. There a surety who has paid the debt is considered as *a purchaser* of the security upon which it is founded. *Chancellor Kent*, in *Cheeseborough vs. Millard*, says, "if a creditor to a bond exacts his whole demand of one of the sureties, that surety in entitled to be substituted in his place, and to a cession of his rights and securities, *as if he was a purchaser*, either against the principal debtor or the co-sureties." 1 *Johns. Ch. R.* 413. Now this *dictum* asserts more than that the surety is entitled to a cession of the collateral securities and to the rights of the creditor thereon—it declares the principle of the Civil Law, that he is to be considered as a purchaser from the creditor of the debt. It therefore denies the position of *Lord Eldon*, that the payment by the surety is an extinguishment of the debt, and of course all the conclusions drawn from that position. To show that *Ch. Kent* is to be understood as going that far, I advert to the fact that he, in this case, quotes and comments on, approvingly, both the Roman Law, and

Lumpkin *vs.* Mills.

the old English cases of *Ex parte Crisp* in *Atkins*, and of *Morgan vs. Seymour*, in 2 *Ch. Rep.* 64. *See also* 2 *John. Ch. Rep.* 560, *and* 4 *Johns. Ch. Rep.* 129.

In 1836, Chancellor *Walworth* speaks yet more explicitly, if possible, as follows : " The equitable principles of the Civil Law as to suretyship have long since been established as the Law of this Court upon that subject. One of the fundamental principles of that law, is, that co-sureties or joint cautioners, are bound to contribute equally as between themselves, to the discharge of the common burden. And another is, if one surety pays the whole debt for which they were jointly bound, he is entitled to the cession of the rights and remedies of the creditor, not only as against the principal debtor, but also as against his co-sureties. Or more properly, according to the modern doctrine upon this subject, the surety, by the mere payment of the debt, and without any actual assignment from the creditor, is in Equity, subrogated to all the rights and remedies of the creditor, for the recovery of his debt against the principal debtor, or his property, or against the co-sureties and their property, to the extent of what they are equitably bound to contribute." *Cuyler vs. Ensworth*, 6 *Paige*, 32, 33. *See also Ibid*, 525. I quote this extract because of its declaration that the equitable principles of the Civil Law had long been established as the law of the Chancery Court of New York. Now the *principle* of the Civil Law, is absolute and unrestricted substitution. In the *Ontario Bank vs. Walker and others*, the creditor had obtained a judgment jointly against the principal debtor and three sureties. One of the sureties paid it, and moved the Court for an order giving him the control of the judgment. Held that he could not get the control *at law*, because it was extinguished, but, if he was in fact surety, upon a proper case made, equity would, in that particular, subrogate him to the rights of the creditor, *because it could not be done at law*. 1 *Hill*, *N. Y. R.* 652, 653. See also the dictum of *Marcy, J. in the New York State Bank vs. Fletcher*, 5 *Wend.* 85, 89.

In Virginia it is settled that the surety of a bond debtor, who has paid the debt, in the settlement of the estate of his principal, is subrogated to the rights of the creditor, and is let in to a dividend as a *specialty creditor*, and not as a creditor by open account. In *Epps et al, Executors of Wayles vs. Randolph*, the surety of a bond debtor paid off the debt, but took no assignment of the bond,

and filed his bill to charge the real estate of his principal, upon the ground that he succeeded to all the rights of the creditor by the mere fact of payment. The right was resisted upon the ground that he had taken no assignment of the bond. The Court decided that he was entitled, and decreed accordingly. 3 *Call*, 125. *See also* 3 *Call*, 329.

The leading case in Virginia is *Lederdale vs. Robinson*, determined by *Ch. J. Marshall* on the Circuit, and taken up to the Supreme Court. The case was this. *Robinson & Smith*, were joint indorsers for one *Roots* on a bill of exchange drawn by him. *Robinson & Smith* had to take up the bill, and *Smith* paid more than his moiety. His administrators filed a bill to compel *Robinson* to reimburse him, in the excess of his payment over and above his moiety. *Robinson* being largely in debt, and his assets being likely to prove insufficient to pay the whole, the right of priority became a question among the creditors.

Under a Statute of Virginia, protested bills, after the death of the drawer or indorser, are made of equal dignity with judgments. Under this Statute, and also upon equitable principles, the *Executors of Smith* claimed to be, by substitution for the creditor, let in to a dividend, as a judgment creditor of *Robinson*, to the extent of his payment above one moiety of the debt. It was contended that he was entitled only as a creditor by open account. It will be perceived that the Statute of Virginia did not affect this question. That only gave the bill the dignity of a judgment. It does not affect the question of substitution. Judge *Marshall* held, in an opinion which surveys the whole field of this argument, and which is characterized by his transcendant ability, that the surety was subrogated to the rights of the creditor on the bill of exchange, and that he was entitled to share in the distribution of *Robinson's* assets, as a judgment creditor. He placed his opinion upon the broad ground of equity, springing out of the relationship of the parties to the bill of exchange, and the fact of payment by the surety, irrespective of any assignment, or of any idea about the extinguishment of the debt. There, I think, the question ought to be placed. The province, to my mind, of a Court of Chancery is, in cases of *manifest equity*, to give relief, although it may be at the expense of reasoning which is purely technical. "The claim of the surety," says *Ch. J. Marshall*, "is clothed in equity, with the legal garb with which the original contract is invested."

2 *Brock*. 253, 163. Upon a division of the District Bench, this case went up to the Supreme Court. That Court unanimously sustained the decision of *Ch. J. Marshall*, and their judgment is supported in an able argument by *Mr. Justice Johnson*. It is a rule of the *Supreme Court*, if the law of a State is well settled, to determine questions originating altogether in that State, according to that law. A uniform course of decisions in Virginia, might have been considered by the Supreme Court as settling a local rule upon this subject. Doubtless, they did consider the law as established there. But, lest it might be believed that the decision was founded upon the local law alone, the Court says : " That this, then, is the settled law of the State, in which this contract and this cause originated, cannot be doubted. But we feel no inclination to place our decision upon that restricted ground, since we are well satisfied with its correctness on a *general principle, and on authorities of great respectability in other States.*" 12 *Wheat.* 594, 598.

We are the better satisfied with our judgment in this case, for the reason that the substitution does injustice to no one. The creditor of course has nothing to do with it—he is satisfied, and if the representatives of the principal, if he be dead, or if the principal debtor himself, being in life, can be presumed to be unaffected by the paramount equity of his sureties' claim, he and they must be presumed to be indifferent, whether it is allowed to him, or is reserved for creditors of a lower grade. Let the amount of the claim go either way, no injustice can be done to him. In any event, it goes in payment of his debts. If any body is entitled to complain, it is the creditor, who holding a lower grade of claim, is excluded by the substitution of the surety. But, really, no injustice is done to him. The surety, by paying the debt to the creditor, abstracts from the assets of the principal debtor, just that amount which the creditor himself would have abstracted, if he had not paid it. The surety could compel the creditor indeed to go upon that fund before resorting to him. *Story's Com. Vol.* 1, 592. 1 *Vern.* 1, 89. 6 *Vesey,* 734. 2 *John. Ch. R.* 561, 562. So the creditor, by claim of lower grade, is in no worse condition than he would be if the security had not paid the debt.

Our judgment, too, derives support from the obvious policy of all our own legislation, relative to the substitution of sureties. That policy is to place the surety in the place of the creditor.

Witness the several Acts of the Legislature giving to sureties the control of executions against their principals, when paid by them. Counsel for the plaintiff in error have sought to draw from these Acts, the contrary inference.    The right of substitution being given by express Act of the Legislature, the inference, say they, is, that in the judgment of the Legislature, it did not before exist. But we think the legislation of Georgia upon this subject, is in affirmance of the right as it existed upon general equitable principles before, and is only intended to cumulate and simplify the remedy by which it is enforced.

Let the judgment of the Court below be affirmed.